Redding *v.* Atlantic City Electric Company et al., Appellants.

Argued January 28, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*M. Carton Dittmann, Jr.*, with him *Benjamin Lerner, Donald Blanken, Edwin W. Scott, Vincent P. McDevitt,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellants.

*Donald G. Oyler*, with him *Wolf and Oyler,* for appellees.

OPINION BY MR. JUSTICE COHEN, October 9, 1970:

This is an appeal from an order dismissing appellant's preliminary objections which alleged that equity

had no jurisdiction to determine the validity of a condemnation of an easement for a transmission line by electric public utility corporations.

Appellants are electric public utility corporations who as part of an extra-high voltage transmission system being constructed in Pennsylvania, New Jersey and Maryland are attempting to construct an extra-high voltage transmission line from the Conemaugh Switching Station in Central Pennsylvania to a point on the Pennsylvania-Maryland border in York County. Appellants negotiated with Carroll and Virginia Redding, appellees, for the purchase of a right of way across their property in Adams County but were unable to reach an agreement. They then initiated condemnation proceedings by action of the board of directors of each appellant and by application to the Public Utility Commission under the Act of May 8, 1889, P. L. 136, §4, added May 21, 1921, P. L. 1057, §1, 15 P.S. §3272.

Appellees appeared and participated in a Commission hearing and objected to appellants' application. By order dated August 26, 1968, however, the Commission found that the service to be furnished through the proposed exercise of the eminent domain power was "necessary or proper for the service, accommodation, convenience, or safety of the public, and that a certificate to that effect should issue." Appellees filed no appeal with the Superior Court.

After originally refusing the tender of a condemnation bond and opposing a petition for approval of the bond in the Court of Common Pleas of Adams County, appellees, on October 25, 1968, withdrew all objections to the bond as presented. Appellants then proceeded to clear the right of way and construct the transmission towers.

On January 8, 1969 appellees filed a complaint in equity seeking to enjoin appellants permanently from entering upon their land and taking possession of the

right of way. The complaint alleged that the condemnation was unlawful because: (1) none of the appellants has the right to condemn land for a transmission line in an area in which it is not located; (2) appellants have no authority to condemn fractional interests in a right of way as tenants in common nor to possess such rights of way as tenants in common with fractional interests; (3) appellants have no right to condemn a right to ingress and egress over appellees' other land to reach the right of way nor to condemn the right to cut trees on premises adjoining such right of way; and (4) the right of way condemned is expressed in such terms as to constitute a conditional fee requiring appellants to file a declaration of taking under the provisions of the Eminent Domain Code. Appellants filed preliminary objections asserting that equity had no jurisdiction over the matter, and it is from the dismissal of those preliminary objections that this appeal is taken.

Appellees move to quash the appeal on the ground that appellants have not raised a jurisdictional question within the meaning of the Act of March 5, 1925, P. L. 23, §1, 12 P.S. §672. We must therefore determine whether we have jurisdiction to decide the merits of this controversy. In our recent decision in *West Homestead Borough School District v. Allegheny County Board of School Directors*, 440 Pa. 113, 269 A. 2d 904 (1970), we stated that equity was without power to act and thus that a jurisdictional question under the Act of 1925 was raised when the legislature provided a statutory remedy which was mandatory and exclusive. We stated that no jurisdictional question was raised when a statutory remedy was permissive or alternative or when a traditional equity principle (such as the existence of an adequate remedy at law) would call for the equity court to withhold the exercise of its jurisdiction.

In a condemnation subject to all the provisions of the Eminent Domain Code of 1964, the Act of June 22, 1964, Special Sess., P. L. 84, §101 et seq., 26 P.S. §1-101 et seq., for example, it is clear that equity has no jurisdiction to determine the propriety of the taking because section 406 prescribes the exclusive, mandatory remedy. *Valley Forge Golf Club v. Upper Merion Township,* 422 Pa. 227, 221 A. 2d 292 (1966); *Faranda Appeal,* 420 Pa. 295, 216 A. 2d 769 (1966); *Mahan v. Lower Merion Township,* 418 Pa. 558, 212 A. 2d 217 (1965); *Pittsburgh Railways Co. v. Port of Allegheny County Authority,* 415 Pa. 177, 202 A. 2d 816 (1964); *Cunfer v. Carbon Airport Authority,* 414 Pa. 408, 200 A. 2d 768 (1964); *Balazick v. Dunkard-Bobtown Municipal Authority,* 414 Pa. 182, 199 A. 2d 430 (1964); *Schwab v. Pottstown Borough,* 407 Pa. 531, 180 A. 2d 921 (1962); *Gardner v. Allegheny County,* 382 Pa. 88, 114 A. 2d 491 (1955).

The situation with respect to a taking by an electric company is somewhat more complex, however. Section 901 of the Eminent Domain Code states that if the condemnation "consists of the taking of a fee, all the provisions of this act shall be applicable." The clear implication of this is that if less than a fee is being taken not all of the provisions of the act would apply. As to this section 901 states that it (the Eminent Domain Code) shall not "repeal, modify or supplant any law insofar as it confers the authority or prescribes the procedure for condemnation of rights-of-way or easements for occupation by . . . electric . . . lines used directly or indirectly in furnishing service to the public."[1] The question then is what is the prior law that is not disturbed by the passage of the Code?

---

[1] We express no opinion as to whether this distinction is a reasonable one or one that denies a condemnee the equal protection of the law.

The statute that gives utilities the power to condemn is §1 of the Act of May 21, 1921, supra, 15 P.S. §3272b which states that such corporations shall have the power— "To appropriate property . . . necessary for its corporate use in the construction, erection . . . of its . . . equipment and facilities for generating electric light, heat, and power . . . for the transmission or distribution thereof . . . provided further That before any such company shall exercise the power conferred by this subsection, the Public Service Commission (PUC) . . . upon application of such company, shall have found and determined, after public hearing, that the service to be furnished . . . through the exercise of said power is necessary or proper for the service, accommodation, convenience, or safety of the public." Under this section the PUC is given the responsibility of determining whether the proposed service is necessary or proper for the public convenience, and what we must determine is whether this section provides a mandatory, exclusive statutory method for testing the validity and scope of the taking for if it does equity is without jurisdiction and appellants have raised a jurisdictional question within the Act of 1925. If, however, the determination of the PUC is preliminary and goes only to the question whether, assuming the exercise of power is valid, such exercise is necessary for the public convenience or if the section provides a nonmandatory, nonexclusive method of testing the validity and scope of the taking, then no jurisdictional question within the Act of 1925 has been raised.

There is a line of cases in which it is stated that PUC approval is only a preliminary step and that the scope and validity of a particular condemnation remains for subsequent determination. *Duquesne Light Company v. Upper St. Clair Township*, 377 Pa. 323, 339, 105 A. 2d 287 (1954) ; *Kearns v. Pennsylvania Public Utility Commission*, 201 Pa. Superior Ct. 174, 191 A.

2d 700 (1963); *Reed v. Pennsylvania Public Utility Commission*, 174 Pa. Superior Ct. 132, 100 A. 2d 399 (1953). In a number of cases this Court and the Superior Court have affirmed PUC orders when the PUC did not decide merely whether the service to be furnished as a result of the taking was necessary for the public convenience but rather questions concerning the validity and scope of the taking. For example: in *Dunk v. Pennsylvania Public Utility Commission*, 434 Pa. 41, 252 A. 2d 589 (1969), we affirmed the order of the Superior Court, 210 Pa. Superior Ct. 183, 232 A. 2d 231 (1967), affirming the action of the PUC granting a certificate to an electric company. One issue that the PUC decided (as to which its decision was upheld by both the Superior Court and this Court) was whether the taking was "necessary for its (the electric company's) corporate use" within the meaning of §1, 15 P.S. §3272. Certainly this was not a preliminary step but rather went directly to the power of the company to take the right of way. See, also the following in which the PUC decided questions beyond whether the proposed service was necessary for the public convenience. *Clemmer v. Pennsylvania Public Utility Commission*, 207 Pa. Superior Ct. 388, 217 A. 2d 800 (1966) (the proper width of the easement); *West Penn Power Company v. Pennsylvania Public Utility Commission*, 199 Pa. Superior Ct. 25, 184 A. 2d 143 (1962) (PUC denied application after finding service to be furnished was necessary and proper in public interest); *Charch v. Pennsylvania Public Utility Commission*, 183 Pa. Superior Ct. 371, 132 A. 2d 894 (1957) (approval of taking within 300 feet of a dwelling house).

It is true that in *McConnell Appeal*, 428 Pa. 270, 272 n. 1, 236 A. 2d 796 (1968), we stated: "In contrast [to the statute authorizing the exercise of the power of eminent domain by natural gas companies], the statutes authorizing condemnation by electric companies

[Act of May 8, 1889, supra, 15 P.S. §3272] and telephone and telegraph companies [citation omitted], expressly provide for public hearing before the Public Utility Commission on the question of the necessity or propriety of the condemnation prior to the exercise of the power." See, also *Adams v. Metropolitan Edison Company*, 46 Pa. D. & C. 2d 125, 136 (Lebanon Co. 1968). Upon reconsideration of the statutory wording, we believe that our statement that the act expressly provides for PUC hearings on the necessity or propriety of the taking was too strong. All that the statute states is that no condemnation shall be effected until the PUC shall have found "that the service to be furnished by said company through the exercise of said power is necessary or proper for the service, accommodation, convenience, or safety of the public." We need not review the cases in which the PUC has decided questions on the scope and validity of a taking or delineate its exact power in this regard. What is important in this context is that even assuming the PUC has the power to decide such questions, the legislature has not made this the exclusive, mandatory procedure for their determination. At most this statutory remedy is permissive or alternative. Therefore, appellants' claim that the existence of this power in the PUC means equity has no jurisdiction does not raise a jurisdictional question within the Act of 1925.

Finally, appellants argue that equity has no jurisdiction because the court below approved their condemnation bond after appellees withdrew their objections to appellants' petition for approval of the bond. The bond was tendered pursuant to the Act of April 29, 1874, P. L. 73, §41, as amended, 15 P.S. §3022, which provides for a bond in cases in which the parties cannot agree upon the amount of damages and for judicial determination of the propriety of the bond in case the party claiming damages does not accept it.

Nowhere in the statute is there any language indicating that the legislature meant this proceeding to be the one at which the validity and scope of the taking had to be determined.

What we are deciding is that neither section 4 of the Act of May 8, 1889, nor section 41 of the Act of April 29, 1874 provides the exclusive, mandatory procedure by which the validity and scope of a taking of a less-than-fee interest by an electric company is to be determined and that appellants therefore have not raised a jurisdictional question within the Act of 1925.

The appeal is quashed. Costs on appellants.

Mr. Justice Roberts concurs in the result.